[No. 18753.  Department Two.  February 19, 1925.]

THE STATE OF WASHINGTON, *Respondent*, v. A. R. THORP, *Appellant*.[1]

WITNESSES (126-1) — CROSS-EXAMINATION — IMPEACHMENT — COLLATERAL MATTERS.  Upon an issue as to the existence of any indebtedness at the time a note was given, plaintiff's testimony in rebuttal that a certain amount claimed by defendant had been paid, is not objectionable as being upon a collateral matter.

CRIMINAL LAW (314)—TRIAL—INSTRUCTIONS—REQUESTS.  Error cannot be assigned in that instructions were not sufficiently specific, in the absence of a request that they be made more complete.

SAME (354)—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.  A new trial for newly discovered evidence is properly denied where the motion was based upon an affidavit so incredible that there was no abuse of discretion.

Appeal from a judgment of the superior court for Lincoln county, Truax, J., entered February 28, 1924, upon a trial and conviction of forgery. Affirmed.

*D. R. Glasgow*, for appellant.

*Roy C. Fox* and *Freece & Pettijohn*, for respondent.

MAIN, J.—The defendant was, by information, charged with the crime of uttering a forged promissory note.  The jury returned a verdict of guilty.  A motion for new trial was made, one of the grounds of which was newly discovered evidence.  This motion was overruled, and from the judgment entered on the verdict, the defendant appeals.

The essential facts may be stated as follows: In the spring of 1920, one Henry Guhlke leased from the appellant a farm in Lincoln county. Thereafter numerous transactions took place between the parties, such as selling of seed wheat, horses, farm machinery, etc.

[1]Reported in 233 Pac. 297.

These transactions continued until the fall of 1921. Some day in October of that year the appellant visited Guhlke in the field where he was doing some harrowing, and it is the appellant's claim that at this time there was a settlement between them which resulted in the giving of a promissory note for the sum of $1,410 by Guhlke to the appellant. The appellant, as to the manner of the execution of the note, testified as follows:

"The note was originally executed in Guhlke's field, there being no one present but myself and Henry Guhlke. C. A. Stockdale came up to where we were standing just after the note had been signed, but did not see it or hear the conversation. I wrote the body of a note and handed it to Guhlke. He kneeled behind the harrow and placed it on the book, but spoiled it in signing and tore it up. I made out another note. He took the book and note and placed it on the side of the horse. He said he spoiled that note also and I made out a third note which was signed and delivered to me. The first note was torn up, but the second one, I do not know where it went."

The appellant further testified that, after the note had been delivered to him, he gave it back to Guhlke in order that the latter might get his father to sign it. In course of time, Guhlke returned the note in question to the appellant, stating that his father had refused to place his name upon it. Some time thereafter the appellant delivered the note to F. T. Larribee Company as collateral security for an account which he was owing to that company. The note soon after this came to the attention of Guhlke and he denied any knowledge of it. Some time later the appellant brought an action upon the note. This was dismissed because of his failure to answer interrogatories which were propounded to him. The attorney whom he had employed in that action withdrew from the case. Henry Guhlke testi-

fied that Thorp visited him in the field, and unequivo-
cally denied everything that Thorp said with refer-
ence to the signing of the promissory note. Upon the
trial, the appellant testified in detail as to the trans-
actions between himself and Guhlke, and if his testi-
mony is correct, at the time the note was given, Guhlke
owed him approximately the amount of the note. In
rebuttal, Guhlke testified in detail as to their transac-
tions and arrived at the result that he was not at that
time indebted to the appellant. The appellant, on cross-
examination, testified to one item of $60.85 as owing
him by Guhlke. In rebuttal, evidence was offered tend-
ing to show that this item had been paid.

The first claim of error is that the evidence in re-
buttal as to this item should not be received, as it was
contradicting a collateral matter brought out on cross-
examination. It may be admitted that the rule is that
a witness cannot be impeached or contradicted upon
collateral matter testified to on cross-examination. The
evidence here complained of, however, was not col-
lateral but on one of the material issues in the case,
which was whether there was any indebtedness owing
by Guhlke to Thorp at the time it is claimed the note
was executed. If such indebtedness were established it
would have some bearing upon the question as to
which of the parties was telling the truth about the
note.

The appellant also complains of three instructions
given to the jury by the trial court. If we gather his
position correctly, it is not that the instructions in
themselves do not correctly state the law but that they
do not go sufficiently into detail. To this objection there
are two answers: First, we think the instructions com-
plained of are not subject to any legal objection; and,
second, the appellant, even if they did not go suffi-
ciently into detail, is not in a position to complain, be-

cause he did not request more specific instructions. It has been held, that, if an instruction is too general in its terms, it cannot be made the basis of error, in the absence of a request that the court make instructions which are fuller and more complete. *State v. Douette,* 31 Wash. 6, 71 Pac. 556; *State v. Armstrong,* 37 Wash. 51, 79 Pac. 490.

The principal reliance by the appellant for a reversal is on the ground of newly discovered evidence. In support of the motion for a new trial, an affidavit of a nephew of the appellant was filed, which, omitting the formal parts, is as follows:

"Walter Thorp, being first duly sworn, upon his oath deposes and says; that he is a nephew of the defendant above named, and has resided in the vicinity of Edwall since his birth, about twenty-four years ago, until going to Spokane in 1923; that during the months of October and November, 1921, affiant was employed by William R. Thorp, brother of the defendant above named, and uncle of affiant, to assist in doing chores on William Thorp's ranch; that one evening while employed as above stated, Henry Guhlke visited the home of William R. Thorp and during said evening a discussion arose as to which of the three, affiant, Henry Guhlke, or William R. Thorpe could most accurately simulate some one else's signature and that to convince said William R. Thorp and Henry Guhlke of the ability of affiant in that particular, affiant wrote on several sheets of paper the. name of Henry Guhlke, simulating the signature of said Henry Guhlke as nearly as possible for affiant to do so; that thereafter said Henry Guhlke presented to affiant a note made payable to A. R. Thorp, defendant above named, and requested affiant to sign the name of Henry Guhlke thereto simulating the signature of Henry Guhlke as nearly as he could; that affiant has examined the State's Exhibit Number 2 in the above entitled cause, and states positively that said note is the note which was signed by affiant at the time hereinabove referred to at the request of Henry Guhlke; that affiant did not

know that said note was intended to be used as a genuine note or that it was to be used in any manner except to show the accuracy with which affiant was able to simulate the signature of Henry Guhlke; that affiant has never informed A. R. Thorp or anyone else of the facts contained in this affidavit until subsequent to the last trial of the above entitled cause; that if a new trial of the above entitled cause is had, affiant will testify to the facts hereinabove related."

The appellant filed an affidavit in which he stated that, in a conversation with Walter Thorp had on the 21st day of February, 1924, for the first time he learned of the facts set forth in the affidavit, and he could not with reasonable diligence have learned of those facts in time to have presented them at the trial of the cause. One of the essential things upon which to base a motion for a new trial upon the ground of newly discovered evidence is that such evidence must be credible and reasonably sufficient to produce a different verdict upon another trial. There is no statement in Walter Thorp's affidavit as to the reason why he did not convey to his uncle, the appellant, the information contained therein prior to the trial. There had been a previous trial in which the jury had disagreed. The appellant and the nephew were living in the same general vicinity. It seems indeed remarkable that a young man would stand by with such information as he sets forth in his affidavit while his uncle was tried, not only once, but a second time, without disclosing those facts. The trial court apparently did not regard the affidavit as credible, and with this view we are in accord. It would be too great a tax on credulity to hold that the trial court abused its discretion in refusing to grant a new trial based upon this affidavit.

The judgment will be affirmed.

MITCHELL, MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.